UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DARWIN J. FIFIELD, SR.,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                              04-CV-6540L

              v.

DETECTIVE BARRANCOTTA,
et al.,

                              Defendants.

_____

**INTRODUCTION**

Plaintiff Darwin Fifield, Sr. ("Fifield"), an inmate at the Wyoming Correctional Facility proceeding *pro se*, brings this action against defendants, Lockport Police Department Chief Neil Merrit ("Merritt"), Lieutenants David Barrancotta ("Barrancotta") and Scott Seekins ("Seekins") and officer Michael Wasik ("Wasik"). Fifield alleges that Barrancotta, Seekins and Wasik used excessive force in arresting him, and that Merritt approved that conduct, all in violation of 42 U.S.C. §1983.

On January 25, 2003, Fifield, his wife and their two children were in their apartment. At approximately 11:30 am, officer Wasik rang the doorbell and asked to enter. Fifield refused to admit Wasik without a warrant, upon which Wasik forced his way into the apartment, stating that he had the right to enter in order to investigate an anonymous 9-1-1 call alleging that Fifield's children were being abused. Wasik positioned himself between a family room couch and the door

to the bathroom, a location which Fifield believes Wasik chose because "somebody must have informed him" that Fifield kept a number of guns in the bathroom closet.

Thereafter, Barrancotta and Seekins entered the apartment without invitation, placed Fifield's arms behind his back causing him to experience pain in his shoulders, and handcuffed him.  They informed him that he would be taken to the police station, to which Fifield responded that he did not want to go.

Fifield was familiar with Barrancotta from a previous incident some time earlier, in which Fifield alleges that Barrancotta had tried to "frame" his son for first-degree rape.  Fifield testified that the incident culminated in Barrancotta's entering Fifield's home at night with his gun drawn, whereupon Fifield struck Barrancotta in the head with a shotgun and disarmed him.  Barrancotta identified himself as a police officer.  However, Fifield admits that, "as soon as [he] saw who it was . . . [Fifield] stomped the dog shit out of him deliberately."  After beating and kicking Barrancotta for several minutes, Fifield warned him that "if he ever came back again and tried this stunt, [he]'d kill him."  Fifield testified that some time later, while exiting the Niagara County Courthouse after a proceeding, he publicly threatened Barrancotta that if "[y]ou ever lay a [hand] on one of my kids again, I'll kill you, you piece of shit."  As a result of these prior altercations, Fifield believes that Wasik, and not Barrancotta, was selected to enter his apartment first on January 25, 2003, because "[Barrancotta] knew if he showed up, he'd wind up dead."

After Fifield was handcuffed, Wasik patted him down and placed him in his patrol car. Fifield estimates that from the time the officers entered his apartment to the time he was placed in the patrol car, about three minutes elapsed.  Wasik then drove Fifield to the police station, where he was later questioned by Seekins and Barrancotta.  After the questioning concluded, Fifield was arrested and charged with, among other things, first degree rape, endangering the welfare of a child, and the use of a child in a sexual performance.  Fifield later pleaded guilty to reduced charges of

third degree rape and the attempted use of a child in a sexual performance. *See State v. Fifield*, 24

A.D.3d 1221 (4th Dept. 2005).

On October 29, 2004, Fifield initiated the instant action. After an initial dismissal due to

Fifield's failure to file an amended complaint (Dkt. #4), one was subsequently filed and the

action was reinstated on June 2, 2005. Much of plaintiff's claims were dismissed (Dkt. #6).

Defendants now move for summary judgment pursuant to Fed. R. Civ. Proc. 56 to

dismiss Fifield's remaining claims of excessive use of force against Wasik, Seekins and

Barrancotta, and approval of the alleged abuse by Chief Merritt. For the reasons set forth below,

the defendants' motion to dismiss (Dkt. #61) is granted, and the amended complaint is

dismissed.

## DISCUSSION

### I.       Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts. . . . Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-587 (1986).

Where, as here, the party opposing summary judgment is proceeding *pro se*, the Court

must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they

suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). Nevertheless,

"proceeding *pro se* does not otherwise relieve [the opposing party] from the usual requirements

of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, 2002 U.S. Dist. LEXIS 25166 at *5

(S.D.N.Y. 2003).  Those requirements include the obligation not to rest upon mere conclusory

allegations or denials, but instead to set forth "concrete particulars" showing that a trial is

needed.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).

**II.     Fifield's Claim of Excessive Use of Force**

In order to maintain a claim under Section 1983, Fifield must show that the defendants

violated his Constitutional or federal statutory rights – here, Fifield's Fourth Amendment right to

personal security and freedom from unreasonable search and seizure – and did so while acting

under color of state law.  *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

In determining whether a Fourth Amendment violation has occurred, the court assesses

the use of force during an arrest by a reasonableness standard.  *See Terry v. Ohio*, 392 U.S. 1,

19-20 (1968).  "The 'reasonableness' of a particular use of force must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*See Graham v. Connor*, 490 U.S. 386, 396 (1989).  To make its finding, the Court considers all

the facts of the case, including the severity of the crime, whether the arrestee posed an

immediate threat to the safety of others, and whether he actively resisted the arrest.  *Id*.  Thus, a

use of force will generally be found to be excessive only where "it is objectively unreasonable

'in light of the facts and circumstances confronting [the arresting officer,] without regard to [his]

underlying intent or motivation.'"  *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.

2004), *quoting Graham*, 490 U.S. 386 at 397.  *See also Zellner v. Summerlin*, 494 F.3d 344, 370

(2d Cir. 2007) (the objective reasonableness of the arresting officer's conduct is evaluated "in

light of the information the officers possessed" at the time).

Here, it is undisputed that in effecting Fifield's arrest, Barrancotta and Seekins took hold

of Fifield's arms, placed them behind his back, and put handcuffs on him, allegedly causing

Fifield to experience shoulder pain, red marks on his wrists from the handcuffs, and to endure

mental anguish and fear for his personal safety and that of his family.  Fifield alleges no further

use of force or abusive physical contact by any of the defendants, and admits that he never

complained to the defendants about the pain in his shoulders while he was being handcuffed.

In reviewing the relevant factors, I note at the outset that the crimes that the defendants

were investigating, and to which Fifield ultimately pleaded guilty,[1] are severe sexual crimes

which were perpetrated against minor children.  With respect to whether the officers would have

believed that Fifield posed an immediate threat to the safety of others, it is undisputed that

Fifield was known to keep weapons in his home, and that he had previously beaten and

repeatedly threatened to kill one of the arresting officers.  While it is undisputed that Fifield

made no attempt to flee, Fifield cannot be said to have been entirely cooperative: upon being

informed that he was being escorted to the police station, Fifield told the officers that he did not

want to go.  In any event, "[f]requently, a reasonable arrest involves handcuffing the suspect."

*Esmont v. City of New York*, 371 F. Supp.2d 202, 214 (E.D.N.Y. 2005).

To the extent that Fifield claims that his physical injuries, in the form of shoulder pain

during handcuffing and red marks on his wrists, support his claim of excessive force, the

reasonableness of a handcuffing is dependent on whether the handcuffs were unreasonably tight,

whether the arrestee's pleas to that effect were ignored, and the degree of injury to the arrestee's

wrists.  *Id.*, 371 F. Supp.2d 202 at 214.  *See also Stokes v. Buskey*, 2007 U.S. Dist. LEXIS 32787

at *41-*42 (E.D.N.Y. 2007) (without more, a routine handcuffing is insufficient to sustain an

---

[1]  Fifield's response to the instant motion asserts that his guilty plea was involuntary.
However, that contention has already been fully adjudicated in state court, and the well-
established principle of collateral estoppel bars this Court from examining the issue.  *See Fifield*,
24 A.D.3d 1221 (addressing the voluntariness of Fifield's plea), *app. den.*, 6 N.Y.3d 775 (2006).
*See generally Camarano v. City of New York*, 624 F. Supp. 1144, 1145 n.2 (S.D.N.Y. 1986)
(plaintiff is estopped from relitigating, in federal court, an issue of voluntariness which has
already been fully litigated and decided in an underlying state court case).

excessive force claim); *Wilder v. Village of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y.

2003) (dismissing excessive force claim based upon handcuffing which resulted in pain and

inflammation of the arrestee's wrists for 24 hours, but required no medical attention).  Fifield

testified that he said nothing during the handcuffing process, admits that he never complained

about the tightness of the handcuffs, and makes no allegation that his wrists were injured by

them or required any medical attention.  Finally, Fifield makes no allegation that the pat-down

search conducted by Wasik was unreasonable, non-routine, or injurious.  *See generally Stokes v.*

*Buskey*, 2007 U.S. Dist. LEXIS 32787 at *43 (noting that "it is axiomatic that a lawful arrest

'establishes the authority to search' and [a routine pat-down] search is 'reasonable' under the

Fourth Amendment"), *citing United States v. Robinson*, 414 U.S. 218, 235 (1973).

In light of the severity of Fifield's crimes, his prior violent assault of a police officer, his

known history of maintaining a cache of weapons in his home, and his expressed desire not to

accompany the officers to the police station, I find that the defendants' *de minimis* use of force –

specifically, the placing of Fifield's arms behind his back, applying handcuffs and administering

a routine pat-down search – was objectively reasonable based upon the undisputed facts.

I am unpersuaded by Fifield's argument that the "mental anguish" he allegedly suffered

during his arrest, including having to confront Barrancotta, who he feared might seek revenge

against him, and to endure the sight of his scared and crying wife and children while he was

helpless to protect or comfort them, elevates the defendants' otherwise reasonable use of

physical force to a constitutionally excessive level.  Although it is well-established that

psychological injuries may be a compensable component of excessive force cases, "whether the

constitutional line has been crossed depends on such factors as . . . whether force was applied in

a good faith effort to maintain or restore discipline or maliciously and sadistically or the very

purpose of causing harm." *Mills v. Fenger*, 2006 U.S. App. LEXIS 31954 at *9 n.1 (2d Cir.

2006) (collecting cases finding that psychological injuries occasioned by an excessive use of

force are compensable), *quoting Robinson v. Via*, 821 F.2d 913, 923 (2d Cir. 1987).  Here,

Fifield does not allege, nor is there any evidence to suggest, that the defendants' actions during

the three minutes he was being taken into custody included any unprofessional comments or

conduct toward Fifield or his family, or were undertaken in a malicious, sadistic, unnecessarily

humiliating or emotionally abusive manner.

Accordingly, Fifield's excessive use of force claims must be dismissed.

**III.    Fifield's Claim Against Merritt**

Fifield admits that he has no basis to believe that Merritt was involved in or

countenanced the alleged use of excessive force against him by the other defendants, and

testified that he has abandoned and agrees to the dismissal of his claim against Merritt.  As such,

that claim is also dismissed.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, that defendants'

conduct in effecting plaintiff's arrest was objectively reasonable, and that defendants are entitled

to judgment as a matter of law.  Accordingly, defendants' motion for summary judgment

dismissing the Amended Complaint (Dkt. #61) is granted, and the Amended Complaint is

dismissed, with prejudice.  Fifield's pending motion for reconsideration (Dkt. #71) of Magistrate

Judge Payson's February 19, 2008 Order (Dkt. #69), which permitted defendant Merritt to file an

answer and denied Fifield's motions to compel additional discovery, is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        April 21, 2008.